UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SHAWN MICHAEL BERRY,

      Plaintiff,

v.                          Case No:  2:25-cv-299-JES-NPM

TAYLOR  SMITH  and  CITY  OF
PUNTA GORDA,

      Defendants.

---

## OPINION AND ORDER

This matter comes before the Court on review of Taylor Smith ("Officer Smith") and the City of Punta Gorda's (the "City") (collectively "Defendants") Motion to Dismiss the Second Amended Complaint (Doc. #25) filed on August 15, 2025.  Plaintiff Shawn Michael Berry (Plaintiff or "Berry") filed an Answer in Opposition To Defendants' Motion (Doc. #27) on August 27, 2025.  For the reasons set forth below, Defendants' motion is mostly denied.

**I.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citation omitted). As the Eleventh Circuit has recently summarized:

> When reviewing a motion to dismiss, we accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim is facially plausible if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. When making the determination of whether a complaint states a plausible claim, we draw on our judicial experience and common sense.
> . . .
> We use a two-step process to determine whether a claim survives Rule 12(b)(6) scrutiny. At the outset, we determine what must be pled for each cause of action. . . . Then, we consider the well-pleaded factual allegations . . . to determine whether they plausibly suggest an entitlement to relief.

<u>Caterpillar Fin. Services Corp. v. Venequip Mach. Sales Corp.</u>, 147 F.4th 1341, 1346-47 (11th Cir. 2025) (citations and internal punctuation omitted).

A pleading drafted by a party not represented by counsel (a pro se party) is held to a less stringent standard than one drafted by an attorney, and the Court will construe such pleadings liberally. <u>Jones v. Fla. Parole Comm'n</u>, 787 F.3d 1105, 1107 (11th Cir. 2015). But "this leniency does not give a court license to

serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014).  "[A] pro se pleading must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." Jones, 787 F.3d at 1107.

**II.**

The following facts are set forth in the Second Amended Complaint (SAC) (Doc. #23) or in documents the Court may consider in deciding a motion to dismiss:

On May 3, 2022, Berry participated in a protest against City Ordinance Chapter 26, Section 11.5(z) (the "Ordinance") while on a public sidewalk in the City.  The Ordinance had been adopted by the City on June 2, 2021, and prohibited the public display of any sign containing obscene language or graphics.  More specifically, the Ordinance provided:

> Unless as otherwise provided for in this Article, no person shall erect, display, wear, alter, maintain, or relocate any of the following signs in the City and such existing signs must be removed:
> . . .
> (z) Any sign which contains obscene language or graphics; and any sign containing fighting words or indecent speech which is legible from any public right-of-way or within any public space, and which can potentially be viewed by children under the age of 17.

> This provision includes signs or flags in or on any
> vehicle, vessel or on any apparel and accoutrements.

Punta Gorda, Fla., Code of Ordinances, ch. 26, § 11.5(z).

"Indecent speech" is defined as "language or graphics that depict

or describe sexual or excretory activities or organs in a manner

that is offensive as measured by contemporary community

standards." Punta Gorda, Fla., Code of Ordinances, ch. 26, §

11.4(a)(32).

During the protest Berry displayed a sign that stated: "PUNTA

GORDA FUCKING FIRST AMENDENT." (Doc. #23, p. 6). Non-party

officers approached Berry and "yelled profanities." Another non-

party officer accused Berry of "being un-American," and threatened

to arrest him and the other protestors. (Id.). Another non-party

officer demanded Berry's identification, and Officer Smith then

began to issue Berry a citation for violation of the Ordinance.

(Id.). Berry did not feel free to leave while Officer Smith wrote

the citation, but was not arrested. Berry had been videotaping

the entire protest, which the SAC asserts constitutes

"journalism." The citation effectively halted Berry's activities

at the protest, and Berry then left the area.

The City proceeded with the civil proceedings against Berry

initiated by the citation, which compelled Berry to appear at four

hearings before the Code Enforcement Board between June and October

2022.  (Id.).  Meanwhile, on September 26, 2022, in unrelated litigation, a state Circuit Court in Charlotte County found the Ordinance was unconstitutional.  See Massey v. City of Punta Gorda, Case No. 21001014CA.  The City voluntarily dismissed the case against Berry on October 12, 2022.

The SAC asserts claims pursuant to 42 U.S.C. § 1983 against Officer Smith and the City for: (1) violation of Berry's First Amendment right to free speech when Defendants "retaliated against him for the content of his political protest sign and journalism" by issuing the citation, and (2) violation of Berry's Fourth Amendment right to be free from unreasonable seizures when he was "temporarily detained and compelled to submit to the issuance of a citation and multiple mandatory code enforcement hearings[.]" (Id. at pp. 3-4).  Read liberally, the SAC thus alleges four claims against each defendant:  (1) First Amendment retaliation for issuing a citation because of the language on the sign; (2) First Amendment retaliation for issuing the citation because of filming at activities of the police and protesters; (3) Fourth Amendment violation for stopping and detaining Berry while the citation was issued; and (4) Fourth Amendment violation for maliciously prosecuting and compelling his appearing before the Code Enforcement Board.  Berry sues Officer Smith in her individual capacity and the City pursuant to the liability principles of

Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658 (1978).  Berry seeks compensatory, punitive, and nominal damages as well as costs.

### III.

Defendants raise three grounds for dismissal: (1) "Plaintiff fails to allege a seizure necessary to properly state a claim for unlawful seizure or malicious prosecution."; (2) "Officer Smith is entitled to qualified immunity because at the time of Plaintiff's alleged citation, a valid and enforceable City ordinance existed."; and (3) "Plaintiff fails to properly plead a Monell claim." (Doc. #25, p. 3.)   The Court begins with the qualified immunity argument, as did Defendants.  (Id. at 4-14.)

**A. Officer Smith's Assertion of Qualified Immunity**

The SAC alleges that Officer Smith issued the citation for violation of the Ordinance in retaliation for Berry exercising his First Amendment rights to display a sign which stated "PUNTA GORDA FUCKING FIRST AMENDMENT" and to videotape the protest activities. The SAC also alleges that Officer Smith violated Berry's Fourth Amendment rights by detaining him while she issued the citation and causing him to attend multiple mandatory court appearances in response to the citation.  Officer Smith asserts that litigation and personal liability for these claims are barred by qualified immunity.  Berry responds that qualified immunity does not apply.

### (1)    Qualified Immunity Principles

Qualified immunity shields government officials performing discretionary functions from civil litigation and liability in their personal capacity unless their conduct violated clearly established statutory or constitutional rights that a reasonable person would have known about. Aguirre v. Seminole Cnty., No. 23-10811, 2025 WL 3078186, at *12 (11th Cir. Nov. 4, 2025); Huggins v. Sch. Dist. of Manatee Cnty., 151 F.4th 1268, 1278 (11th Cir. 2025).  A district court must resolve a request for qualified immunity "at the earliest possible stage in litigation."  Miller v. Palm Beach Cnty. Sheriff's Office, 129 F.4th 1329, 1334 (11th Cir. 2025).  "The qualified immunity defense may be raised and addressed on a motion to dismiss, and will be granted if the complaint 'fails to allege the violation of a clearly established constitutional right.'"  Smith ex rel. Smith v. Siegelman, 322 F.3d 1290, 1294 (11th Cir. 2003) (citations omitted.)  Whether the SAC alleges a violation of a clearly established right is a question of law.  Id.; Williams v. Alabama State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997).

The Court employs a burden-shifting analysis to determine whether official conduct is protected by qualified immunity. Huggins, 151 F.4th at 1278.  First, the official must prove that she was acting within the scope of her discretionary authority

when the alleged wrongful act occurred. Huggins, 151 F.4th at 1278; DeMarcus v. Univ. of S. Ala., 133 F.4th 1305, 1317 (11th Cir. 2025). This requires the official to show that her actions were undertaken pursuant to the performance of her duties and within the scope of her authority. Huggins, 151 F.4th at 1278. A district court looks to the general nature of defendant's action, temporarily disregarding the alleged illegality of that act. Id.

Second, if the official makes the required showing, the burden shifts to plaintiff to show that the conduct violated his statutory or constitutional right and that the right was clearly established at the time of the challenged conduct. Huggins, 151 F.4th at 1278; Watkins v. Davis, 156 F.4th 1084, 1097 (11th Cir. 2025). "[A] police officer is entitled to qualified immunity if a reasonable police officer could have believed his or her actions were lawful in light of clearly established law and the information possessed by the officer at the time the conduct occurred." Watkins, 156 F.4th at 1097 (citation omitted.) Plaintiff can show the law was "clearly established" in any of three ways: (1) identifying a qualifying case with "indistinguishable facts," (2) relying on "a broad statement of principle within the Constitution, statute, or case law," or (3) showing that the Officers' behavior was "so egregious" that it was obvious "a constitutional right was clearly violated, even in the total absence of case law." Id. See also

Andre v. Clayton Cnty., Georgia, 148 F.4th 1282, 1298 (11th Cir. 2025).

### (2)  Application of Qualified Immunity Principles

#### (a)  Action Within Scope of Discretionary Authority

Officer Smith was clearly acting within her discretionary authority as a law enforcement officer during the entire encounter with Berry.  As the SAC alleges, Officer Smith was acting "under color of state and local law as a uniformed police officer for the City of Punta Gorda" when she issued the citation.  (Doc. #23, p. 4.)  Issuing the citation was pursuant to the performance of Officer Smith's duties and was within the scope of her authority as a City police officer.  Thus, the burden shifts to Berry to show that qualified immunity is not appropriate for his claims.

The Court analyzes each claim separately to determine whether Berry has carried his burden to show qualified immunity is not appropriate.  Watkins, 156 F.4th at 1098.  The Court begins with the two First Amendment claims, then addresses the two Fourth Amendment claims.

#### (b)  First Amendment Claims

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. Hartman v. Moore, 547 U.S. 250, 256 (2006). If the official's adverse action is motivated

by such retaliation, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the person may generally seek relief by bringing a First Amendment claim. <u>Nieves v. Bartlett</u>, 587 U.S. 391, 398 (2019). To state a First Amendment retaliation claim, Berry must plausibly allege that (1) he engaged in constitutionally protected speech; (2) the defendant's retaliatory conduct adversely affected that protected speech; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech. <u>Huggins</u>, 151 F.4th at 1281, (citing <u>DeMartini v. Town of Gulf Stream</u>, 942 F.3d 1277, 1289 (11th Cir. 2019)). To defeat a qualified immunity motion, Berry must establish not only that he was engaged in constitutionally protected speech, but that the law providing such constitutional protection was clearly established at the time of his conduct. <u>Huggins</u>, 151 F.4th at 1278.

Officer Smith argues that she "is entitled to qualified immunity because at the time of Plaintiff's alleged citation, a valid and enforceable City ordinance existed." (Doc. #25, p. 3.) Officer Smith essentially asserts that the law was not clearly established at the time she issued the citation because the Ordinance prohibited Berry's conduct and the Ordinance was not found unconstitutional until <u>after</u> she issued the citation.

**(i) Berry's Sign**

It is undisputed that the Ordinance had not been declared unconstitutional at the time the citation was issued. The legitimacy of the officer's conduct, however, does not turn on the constitutionality of the Ordinance or Officer Smith's ability to predict whether it would be declared unconstitutional. "The subsequently determined invalidity of the [city] ordinance . . . does not undermine the validity of the arrest made for violation of that ordinance . . .". Michigan v. De Fillippo, 443 U.S. 31, 40 (1979). "Police are charged to enforce laws until . . . they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality — with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." (Id. at 38.)[1] So long as the officer has probable cause, an arrest is constitutional. Nieves, 587 U.S. at 398.

---

[1] The Supreme Court discussed the exception mentioned in De Fillippo the next term in Ybarra v. Illinois, 444 U.S. 85, 96 n.11 (1979). Police officers had acted on the strength of a state statute that did not define the elements of a substantive criminal offense but purported to authorize the police in some circumstances to make searches and seizures without probable cause and without search warrants. The Supreme Court noted that this fell within the category of statutes purporting to authorize searches without probable cause, "which the Court has not hesitated to hold invalid as authority for unconstitutional searches. (collecting cases)." Id.

While De Fillippo involved a Fourth Amendment claim, the same principles apply to First Amendment retaliation claims. Nieves, 587 U.S. at 397-98 (probable cause to arrest defeats a claim that the arrest was in retaliation for speech protected by the First Amendment); DeMartini, 942 F.3d at 1306 ("[T]he presence of probable cause will generally defeat a . . . § 1983 First Amendment retaliation claim . . . .."); Cooper v. Dillon, 403 F.3d 1208, 1220-21 (11th Cir. 2005) (finding circumstances of case did not give the officer "fair warning" that the statute was unconstitutional).

Officer Smith argues that she had probable cause to issue the citation, or at least arguable probable cause, and therefore she is entitled to qualified immunity. (Doc. #25, pp. 7, 9-11.)  The Court concludes, however, Officer Smith did not have any level of suspicion, and therefore is not entitled to qualified immunity.

As Berry points out (Doc. #27, pp. 7-8), long before Officer Smith issued the citation the United States Supreme Court had held that conveying a message which included the written word "fuck" was protected by the First Amendment. Cohen v. California, 403 U.S. 15, 20 (1971) (holding that the words "Fuck the Draft" written across a witness's jacket in a courtroom corridor, while distasteful, did not fall into a category of speech not protected by the First Amendment.)  Shortly before the issuance of the citation, the Supreme Court reiterated this principle. Mahanoy

-12-

*Area Sch. Dist. v. B. L. by & through Levy*, 594 U.S. 180, 185 (2021) involved a high school student who posted an image of herself and a friend with middle fingers raised and the caption "Fuck school fuck softball fuck cheer fuck everything."  The Supreme Court stated:

> This criticism did not involve features that would place it outside the First Amendment's ordinary protection. B. L.'s posts, while crude, did not amount to fighting words. See *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). And while B. L. used vulgarity, her speech was not obscene as this Court has understood that term. See *Cohen v. California*, 403 U.S. 15, 19-20, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). To the contrary, B. L. uttered the kind of pure speech to which, were she an adult, the First Amendment would provide strong protection. See *id.*, at 24, 91 S.Ct. 1780; cf. *Snyder v. Phelps*, 562 U.S. 443, 461, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011) (First Amendment protects "even hurtful speech on public issues to ensure that we do not stifle public debate"); *Rankin v. McPherson*, 483 U.S. 378, 387, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) ("The inappropriate . . . character of a statement is irrelevant to the question whether it deals with a matter of public concern").

*Id.* at 191.

Thus, at the time Officer Smith issued the citation, the law was clearly established that Berry's written sign was not obscene and was protected by the First Amendment.  No factual allegation in the SAC takes Berry's circumstances outside the broad scope of this law, and the SAC specifically pleads a lack of probable cause by Officer Smith.  (Doc. #23, p. 4.)  There was a Supreme Court case with indistinguishable material facts (*Cohen*) and broad

-13-

statements of principle within Supreme Court cases (Mahoney Area) which clearly precluded a reasonable officer from believing she could validly issue a citation for violation of the Ordinance based on the contents of the sign. Since the SAC describes nothing outside the protection of the First Amendment in connection with Berry's sign, Officer Smith did not have any level of suspicion, including arguable probable cause. Accordingly, Officer Smith is not entitled to qualified immunity for issuing a citation based on the contents of Berry's placard.

### (ii)    Videotaping Police and Protest

A portion of the First Amendment retaliation claim in the SAC includes the assertion that Berry was videotaping the protest activities, which the SAC asserts constitutes "journalism" protected by the First Amendment. The SAC alleges in a conclusory fashion that the citation was issued in retaliation for the videotaping activity. Officer Smith argues that at the time the citation was issued there was not a clearly established First Amendment right to videotape the police activities at the protest, and therefore she is entitled to qualified immunity as to the video portion of the claim. (Doc. #25, p. 6, n.2.) The Court agrees with Officer Smith.

The law in the Eleventh Circuit was not sufficiently clear at the time of the protest to defeat qualified immunity. In 2000 the

Eleventh Circuit found that videotaping a police officer and the surrounding area is protected by the First Amendment. See Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000) ("As to the First Amendment claim under Section 1983, we agree with the Smiths that they had a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct. The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." (collecting cases.)  In 2021, however, the Eleventh Circuit walked back this broad language, finding that Smith did not provide the required clarity and upholding an officer's entitlement to qualified immunity on a First Amendment retaliation claim. Crocker v. Beatty, 995 F.3d 1232, 1243 (11th Cir. 2021).  In Khoury v. Miami-Dade Cnty. Sch. Bd., 4 F.4th 1118, 1129 (11th Cir. 2021) the Court found that the First Amendment right to videotape the activity of a police officer was clearly established under the circumstances of that case, citing Smith and distinguishing Crocker.  As stated in Ghandour v. City of Miami, 710 F. Supp. 3d 1188, 1198 (S.D. Fla. 2024) "[i]n assessing whether Smith applies to a particular case, courts often grapple with factual and legal nuances relevant to a given case, reaching differing conclusions."

The Court finds that the law was not sufficiently clear to place officers on notice that it would violate the First Amendment to issue a citation because the person was videotaping police activities at this protest.  "'For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right' such that 'in the light of pre-existing law the unlawfulness [is] apparent.'"  Aguirre, 2025 WL 3078186, at *14 (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  As the Supreme Court stated in Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011),

> [a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would [have understood] that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. See ibid.; Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

Under the factual allegations in the SAC, it appears that Berry did indeed have a First Amendment right to videotape the activities at the protest, including police conduct.  However, Berry has not satisfied the "beyond debate" standard, and therefore Officer

Smith is entitled to qualified immunity as to the videotaping aspect of the First Amendment retaliation claim.[2]

### (c)   Fourth Amendment Claims

The SAC asserts that Officer Smith violated the Fourth Amendment in two ways:  by detaining Berry while she issued the citation, and by causing Berry to attend multiple mandatory court appearances in response to the citation.  The Court discusses each separately.

### (i)   Seizure During Issuance of Citation

The Fourth Amendment "protects people from unreasonable . . . seizures." U.S. Const. Amend. IV.  "Not all interactions between law enforcement and citizens, however, implicate the scrutiny of the Fourth Amendment." United States v. Jordan, 635 F.3d 1181, 1185 (11th Cir. 2011).  Courts have identified three distinct types of police-citizen encounters: (1) consensual encounters; (2) brief seizures or investigatory stops; and (3) arrests.  Jordan, 635 F.3d at 1185; United States v. Perez, 443 F.3d 772, 777 (11th Cir.

---

[2] Even if Officer Smith is not entitled to qualified immunity for the videotaping portion of the claim, the SAC fails to plead plausible facts to establish that the issuance of the citation was in retaliation for that videotaping.  The SAC simply states in a conclusory fashion that Berry was videotaping, and that the citation was issued because of it.  The plausible facts indicate that it was the content of the sign that caused issuance of the citation, and no facts are alleged to establish that the videotaping played a role in Officer Smith's decision.

2006); <u>Popple v. State</u>, 626 So.2d 185, 186–87 (Fla. 1993).  Only the last two types of encounters implicate the Fourth Amendment, and only the first two types of encounters are at issue in this case.

"There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." <u>United States v. Franklin</u>, 323 F.3d 1298, 1301 (11th Cir. 2003) (quotations omitted).  Such a consensual encounter does not implicate the Fourth Amendment because the person is free to leave at any time.  <u>United States v. Mendenhall</u>, 446 U.S. 544, 553 (1980). To establish the encounter was consensual, the officer bears the burden of proving voluntary consent to the encounter based on the totality of circumstances.  <u>Jordan</u>, 635 F.3d at 1185. If an objective, reasonable, innocent person would feel free to terminate the encounter, the person has not been seized.  <u>United States v. Knights</u>, 989 F.3d 1281, 1286 (11th Cir. 2021).

In contrast, Fourth Amendment protections do "extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002). <u>See also</u> <u>Whren v. United States</u>, 517 U.S. 806, 809–10 (1996); <u>United States v. Drayton</u>, 536 U.S. 194 (2002); <u>Jordan</u>, 635 F.3d at 1185.  A person is "seized" within the meaning of the Fourth Amendment when an officer, by means of physical force or a

show of authority, terminates or restrains the person's freedom of movement through intentional means. Brendlin v. California, 551 U.S. 249, 254 (2007). This includes a show of authority without the use of physical force. Id. If the actions of the police are ambiguous, a seizure occurs if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Brendlin, 551 U.S. at 255. Thus, a person has been "seized" within the meaning of the Fourth Amendment if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. California v. Hodari D., 499 U.S. 621, 627-28 (1991); Andre, 148 F.4th at 1292. To justify an investigatory stop, an officer must have reasonable well-founded suspicion to believe that a person has committed, is committing, or is about to commit a crime. Ornelas v. United States, 517 U.S. 690, 696 (1996).

Defendants begin by arguing that Berry "was not seized." (Doc. #25, p. 7.) Defendants correctly assert that an officer does not seize a person by approaching the person and identifying herself, or by simply asking questions. (Doc. #25, p. 8 n.4.) Defendants then incorrectly argue that the allegations in the SAC only establish that there was a consensual police-citizen exchange involving no coercion or detention, and that issuance of a citation

is insufficient to constitute a seizure without some other conduct by Officer Smith.  (Id. at 7-8.)

If Officer Smith's conduct did not violate the Fourth Amendment she would certainly be entitled to qualified immunity. Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019).  Although Officer Smith argues to the contrary, the plausible factual allegations and reasonable inferences in the SAC show that Officer Smith "seized" Berry within the meaning of the Fourth Amendment when she detained Berry to issue the citation.  Officer Smith and fellow officers approached Berry; one or more of the officers demanded his identification and made aggressive comments to him while Officer Smith wrote the citation.  It is a reasonable inference that Officer Smith utilized and retained Berry's identification while she completed the citation.  No reasonable person would have felt free to leave until after the citation process was complete.  Accordingly, the SAC does not describe a consensual encounter but one where Officer Smith "seized" Berry within the meaning of the Fourth Amendment.

Officer Smith argues that even if a brief, temporary seizure occurred when she issued the citation, she is still entitled to qualified immunity. (Doc. #25, pp. 8-9.)  Officer Smith correctly asserts that officers are permitted to approach someone for purposes of investigating possible criminal behavior without

probable cause if there is reasonable suspicion of criminal activity, citing Terry v. Ohio, 392 U.S. 1 (1968). (Id.) Officer Smith argues that the "brief 'stop' of the Plaintiff to issue him a ticket is akin to a Terry stop and thus does not sufficiently implicate the Fourth Amendment." (Id. at 9, citing Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005)).[3] Officer Smith also argues she is entitled to qualified immunity because she had arguable probable cause to temporarily detain Berry to issue him the citation for violating the Ordinance. (Doc. #25, pp. 9-11.)

The Court agrees with Officer Smith that her issuance of the citation is akin to a Terry stop. Contrary to her argument, however, the Fourth Amendment _does_ apply to such a stop and detention, and requires a reasonable well-founded suspicion that Berry has committed, is committing, or is about to commit a crime. Ornelas, 517 U.S. at 696. As the Court has already determined, Officer Smith did not have any level of suspicion that Berry's conduct was not protected by the First Amendment. Officer Smith is therefore not entitled to qualified immunity for this aspect of the Fourth Amendment seizure claim.

### (ii)    Malicious Prosecution

---

[3] The Court notes that Bennett has been red-flagged as partially abrogated.

The SAC also asserts that the City prosecuted the code enforcement case initiated by the citation, which compelled Berry to attend four mandatory hearings under threat of penalty. (Doc. #23, pp. 4, 6.) Read liberally, this asserts a claim for malicious prosecution under the Fourth Amendment.

Fourth Amendment malicious prosecution claims focus on seizures pursuant to legal process. Aguirre, 2025 WL 3078186, at *16 (citing Williams v. Aguirre, 965 F.3d 1147, 1157–58 (11th Cir. 2020)) (explaining malicious prosecution is a "shorthand way of describing" certain Fourth Amendment claims involving seizure pursuant to legal process). "To succeed on a malicious-prosecution claim, then, a plaintiff must show that the legal process justifying the seizure was defective due to constitutional infirmities." Aguirre, 2025 WL 3078186, at *16 (citation omitted).

To state a Fourth Amendment malicious-prosecution claim, a plaintiff must plausibly allege four elements: (1) plaintiff was seized under legal process; (2) the legal process justifying the plaintiff's seizure was constitutionally infirm; (3) the suit or proceeding terminated in the plaintiff's favor; and (4) the seizure would not otherwise be justified without legal process. Gervin v. Florence, 139 F.4th 1236, 1248–49 (11th Cir. 2025). When considering qualified immunity for malicious prosecution claims, the court also reviews for arguable probable cause and whether the

law was clearly established.  Prospero v. Sullivan, 153 F.4th 1171, 1183-84 (11th Cir. 2025).

Officer Smith did not detain Berry pursuant to legal process when she stopped him to issue the citation.  It is factually undisputed that Officer Smith had no warrant or similar legal process to restrain Berry's movements.  As has been stated before by this court, the seizure while Officer Smith wrote a ticket cannot serve as the required seizure pursuant to legal process. Hoffman v. Smith, No. 2:24-CV-111-SPC-KCD, 2024 WL 511161, at *1 (M.D. Fla. Dec. 13, 2024) (Chappell, J.).  Accordingly, Berry's malicious prosecution claim cannot include the stop and detention while Officer Smith wrote the citation.

The citation, however, was a legal process which resulted in Berry being required to attend multiple subsequent code enforcement hearings.  See generally Fla. Stat. § 162.21(3)-(5), (8).  As discussed previously, the SAC has alleged enough facts to plausibly show that the legal process (the citation) was constitutionally infirm.  The issue is whether Berry suffered a seizure due to the citation.  Berry essentially argues that he was subjected to a "continuing seizure" because he was compelled to appear on four occasions for Code Enforcement Board hearings in response to the citation.

The Eleventh Circuit expressed doubts about the viability of the continuing seizure theory, even in the context of a criminal prosecution. Kingsland v. City of Miami, 382 F.3d 1220, 1236 (11th Cir. 2004) ("normal conditions of pretrial release" do not "constitute a continuing seizure barring some significant, ongoing deprivation of liberty, such as a restriction on the defendant's right to travel interstate"), *abrogated on other grounds by* Aguirre, 965 F.3d at 1159. More recently, the Eleventh Circuit held that "[t]o succeed on a Fourth Amendment claim for a seizure pursuant to legal process in this context, a plaintiff must prove that the officer took an affirmative act to continue the prosecution." Washington v. Howard, 25 F.4th 891, 912 (11th Cir. 2022). Such affirmative acts include filing the probation-revocation petition and offering later testimony at the probation-revocation hearing. Gervin, 139 F.4th at 1248. See also Lyon v. Sheriff of Lake Cnty., Florida, No. 22-11839, 2023 WL 166889, at *2 (11th Cir. Jan. 12, 2023) ("Under our precedents, Lyon was not seized merely because he was required to appear in court.")

Here, Officer Smith is entitled to qualified immunity as to the Fourth Amendment malicious prosecution claim because there is no allegation that she took affirmative acts to continue the City's prosecution of Berry. Additionally, the law was not clearly

established that the continuing seizure theory applies to civil cases such as the code enforcement proceedings.

In sum, Officer Smith is not entitled to qualified immunity on the claim of First Amendment retaliation based on the content of plaintiff's sign, but is entitled to qualified immunity on the claim of First Amendment retaliation based on photographing officers at the protest.  Additionally, Officer Smith is not entitled to qualified immunity on the claim of Fourth Amendment violation based on the detention to issue the citation, but is entitled to qualified immunity on the claim of Fourth Amendment violation based on being required to appear at multiple hearings.

**B. Pleading Deficiencies**

Defendants next argue that the SAC "fails to state a claim under any theory of relief, and dismissal is warranted."  (Doc. #25, p. 3.)  The Court discusses the First Amendment and the Fourth Amendment arguments separately.

**(1)  First Amendment Retaliation Claims**

As previously stated, in addition to alleging plaintiff was engaged in constitutionally protected speech, the SAC must plausibly allege that: (1) defendants' retaliatory conduct adversely affected Berry's protected speech, and (2) there was a causal connection between the retaliatory conduct and the adverse effect on the speech.  DeMartini, 942 F.3d at 1289.  Defendants

challenge the sufficiency of the allegations of both these elements.

Defendants argue that issuing and prosecuting the citation caused only de minimis inconvenience on the exercise of Berry's First Amendment rights, which is insufficient to state a claim. (Doc. #25, pp. 6-7.)  When determining the adverse effect on a plaintiff's protected speech, courts "consider whether the allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights. This presents an objective question." Huggins, 151 F.4th at 1281. The SAC plausibly alleges sufficient facts to show that, viewed objectively, the conduct of Defendants would likely deter a person of ordinary firmness from the exercise of First Amendment rights.

Berry was approached by multiple officers, at least some of whom were in uniform.  At least one officer threatened to arrest him and others, and it is clear from the circumstances that Berry was not allowed to leave until the citation was written.  The SAC alleges that Berry's "protest was effectively halted" by the citation. (Doc. #23, p. 6.)  The citation was an official charging document which required Berry to appear at multiple mandatory Code Enforcement Board hearings which could have resulted in civil penalties.  Viewed objectively and in the light most favorable to Berry, as required at this stage of the proceedings, the Court

finds that the conduct was not de minimis and that a person of ordinary firmness would likely be deterred from the exercise of his or her First Amendment rights by Defendants' conduct.

Defendants also challenge the sufficiency of the causation element, arguing that Officer Smith's subjective motivation was the Ordinance, not the language on Berry's sign. (Doc. #25, pp. 6-7.)  "In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech. However, once the plaintiff shows that her protected conduct was a motivating factor, the burden shifts to the defendant to show that she would have taken the same action in the absence of the protected conduct, in which case the defendant cannot be held liable." Castle v. Appalachian Tech. Coll., 631 F.3d 1194, 1197 (11th Cir. 2011)(citations omitted.)

The SAC has plausibly asserted that the adverse action (the citation) would not have occurred absent the words on Berry's sign. Officer Smith's motivation to issue the citation was the words, which she wrongly believed were not protected by the First Amendment.  The SAC sufficiently pleads this element of the claim.

Defendants also argue that the SAC fails to state either a First Amendment or a Fourth Amendment claim because Officer Smith had probable cause (or at least arguable probable cause) to issue

the citation. (Doc. #25, pp. 6-7.) As discussed earlier, it is certainly true that the existence of probable cause, or arguable probable cause in the context of qualified immunity, would preclude both First and Fourth Amendment claims. But as the Court has already found, Officer Smith lacked either arguable or actual probable cause.

Even without any level of probable cause, Officer Smith can prevail by showing that the seizure would have been made for some lawful reason other than retaliation. <u>Nieves</u>, 587 U.S. at 404. Viewing the facts in the SAC in favor of Berry, no such showing has been made.

**(2)  Fourth Amendment Claims**

Defendants argue that (a) the SAC does not contain a sufficient nexus between the actions of Officer Smith and the alleged violation of Berry's Fourth Amendment rights; (b) the SAC must plead more about Berry's subjective feelings than that he "did not feel free to leave"; and (c) receiving a citation from Officer Smith "does not rise to the level sufficient to assert a claim for unlawful seizure," and there must be "some objective action by Smith, other than the citation, that shows there was a seizure." (Doc. #25, p. 8.)

As discussed earlier, multiple officers approached Berry, yelled profanities, and made threats of arrest. (Doc. #23, p. 2).

Before Officer Smith issued the citation, at least one officer approached and demanded that Berry produce identification. (Id.). Berry was detained while a citation was issued. The Court finds that Berry has pled sufficient facts to show that a reasonable person in Berry's circumstances would not have felt free to leave and was seized. The Court has already determined that Officer Smith did not have sufficient reason to issue a citation to Berry for violating the Ordinance. No additional action by Officer Smith was required to constitute a seizure. Accordingly, Berry has plausibly asserted a claim for unlawful seizure under the Fourth Amendment.

Defendants also argue that the SAC "fails to plead a claim for malicious prosecution" "because Plaintiff was never seized pursuant to legal process" and the SAC "does not allege that [Berry] was charged with any crime, received legal process with respect to any charge, or that he was seized after any legal process." (Id. at 11-12.) "Given the lack of allegation of any criminal charge or legal process, Plaintiff has not alleged that [defendants] were somehow responsible for that legal process going wrong." (Id. at 12.)

Contrary to Defendants' assertion, a malicious prosecution claim does not require a plaintiff to have been criminally prosecuted. See Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d

1352, 1355 (Fla. 1994) ("In order to prevail in a malicious prosecution action, a plaintiff must establish that: (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; . . . "); Scott v. City of Miami, 139 F.4th 1267, 1279 (11th Cir. 2025).

However, as discussed above, the SAC fails to sufficiently plead that Berry was seized as a result of the citation merely because he was required to appear in court since there is no allegation that Officer Smith took any affirmative action to continue the code enforcement proceedings. Accordingly, the Court agrees with Defendants that Berry has failed to state a claim for malicious prosecution.

In sum, the SAC plausibly sets forth claims of First Amendment retaliation and Fourth Amendment seizure in connection with issuance of the citation, but does not set forth a plausible claim of malicious prosecution based on mandatory appearances in code enforcement proceedings.

## C. Monell Claim Against the City

The SAC asserts that the City is liable for the First and Fourth Amendment violations under the principles established by Monell. Generally, a local government may not be sued for constitutional injuries inflicted by its employees. Monell, 436 U.S. at 694. Instead, the government as an entity is responsible

"when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. "To prove a Monell claim, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." Teel v. Lozada, 99 F.4th 1273, 1279 (11th Cir. 2024) (quotation omitted). See also Andre, 148 F.4th at 1300.

Liability under Monell may be based on an official policy or "a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." Khoury v. Miami-Dade Cnty. Sch. Bd., 4 F.4th 1118, 1131 (11th Cir. 2021). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality," while a "custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." Goebert v. Lee Cnty., 510 F.3d 1312, 1332 (11th Cir. 2007) (citations omitted.)

The City argues that the SAC has failed to state a claim under Monell because Berry has failed to allege sufficient facts to establish a pattern of unconstitutional conduct to impose

liability.  (Doc. #25, pp. 15-16.)  The City argues that the SAC only proffered one other example of the challenged policy or practice and "even one or two incidents of unconstitutional activity is generally insufficient to impose liability against a municipality." (Id., p. 15.)

As explained by the Supreme Court,

> it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy.

Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).

Here, Berry does not rely on custom or an unwritten policy or practice of regulating free speech.  Rather, Berry alleges that he was cited under an Ordinance officially adopted and promulgated by the City.  Thus, Berry has pled sufficient plausible facts to hold the City liable for any constitutional violations caused by the Ordinance.

Berry must also plead sufficient facts to show that the Ordinance was the "moving force" behind a violation of his constitutional rights.  See Barnett v. MacArthur, 956 F.3d 1291,

1296 (11th Cir. 2020). Berry has pled (and the City does not dispute) that the Ordinance prohibits "[a]ny sign which contains obscene language or graphics . . .[.]" Punta Gorda, Fla., Code of Ordinances, ch. 26, § 11.5(z). Construing the facts pled by Berry in his favor (as the Court is required to do at this stage in the proceedings), the Court finds the SAC sufficiently pleads that the Ordinance's prohibition on certain signs was the moving force for the detention and citation. As noted earlier, Berry has not asserted sufficient facts to state a claim as to the videotaping. The operative pleading alleges, in a conclusory fashion, that he "was videotaping the entire protest, the videotaping was creation of journalism," and that "as a result of the ticket, [Berry's] journalism was stopped." (Doc. #23, p. 6.) Outside of this conclusory allegation, Berry's complaint is devoid of any facts showing a causal connection between his photojournalism and Officer Smith's issuance of the citation under the Ordinance. Thus, even if Berry's photojournalism was protected speech, he has not plausibly set forth a causal connection between his photojournalism and the citation. Accordingly, the City's motion to dismiss is granted as to Berry's claim for First Amendment retaliation based on his videotaping the protest activities.

Berry has pled sufficient facts to hold the City liable under Monell for violation of his Fourth Amendment right to be free from

unreasonable seizure during issuance of the citation. Berry's claim for malicious prosecution under the Fourth Amendment fails because there is no allegation that Officer Smith took any affirmative action to continue the code enforcement proceedings after she cited Berry pursuant to the Ordinance. Thus, the City cannot be held liable under Monell for the malicious prosecution claims because "Monell and its progeny do not 'authorize[ ] the award of damages against a municipal [entity] based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm.'" Andre, 148 F.4th at 1306 (citing Teel, 99 F.4th at 1288), and the City's Motion to Dismiss Berry's claim for malicious prosecution is granted.

Accordingly, it is now

**ORDERED:**

Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) Officer Smith's motion to dismiss the claim of First Amendment retaliation for issuing a citation because of the language on the sign is **DENIED** because Officer Smith is not entitled to qualified immunity and the Amended Complaint states a plausible claim;

(2) Officer Smith's motion to dismiss the claim of First Amendment retaliation for issuing the citation because of filming

the activities of the police and protesters is **GRANTED** because Officer Smith is entitled to qualified immunity and the Amended Complaint does not state a plausible claim;

(3) Officer Smith's motion to dismiss the claim of Fourth Amendment violation for stopping and detaining Berry while the citation was issued is **DENIED** because Officer Smith is not entitled to qualified immunity and the Amended Complaint states a plausible claim;

(4) Officer Smith's motion to dismiss the claim of Fourth Amendment violation for maliciously prosecuting and compelling plaintiff's appearing before the Code Enforcement proceedings is **GRANTED** because Officer Smith is entitled to qualified immunity and the Amended Complaint does not state a plausible claim;

(5) The City's motion to dismiss the claim of First Amendment retaliation for issuing the citation because of filming the activities of the police and protesters is **GRANTED** because Plaintiff has failed to adequately plead constitutional harm by the City;

(6) The City's motion to dismiss the claim of Fourth Amendment violation for maliciously prosecuting and compelling plaintiff's appearing before the Code Enforcement proceedings is **GRANTED** because Plaintiff has failed to adequately plead constitutional harm by the City;

(7) The City's motion to dismiss is otherwise **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __3rd__ day of December 2025.

Copies:
Parties of record